# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| INTERCON CONSTRUCTION, INC., | |
|     Plaintiff, | Case No. 18-CV-2081-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| TEAM INDUSTRIAL SERVICES, INC., | |
|     Defendant. | |

Plaintiff InterCon Construction, Inc., moves for an award of attorney's fees. Doc. 74. Defendant TEAM Industrial Services, Inc., resists. Doc. 75. I **grant** the motion **in part** and **deny** the motion **in part** (Doc. 74). I also sua sponte award pre- and post-judgment interest.

## I.  BACKGROUND

InterCon initiated this action in October 2018, raising claims of breach of contract and contractual indemnification. Doc. 1. On February 10, 2020, when the parties had completed written and expert discovery but not yet conducted any depositions, TEAM offered to settle the lawsuit for $100,000. Docs. 13, 74-1, 75-1. InterCon rejected this offer. Doc. 75-1. According to InterCon, at the time of the settlement offer, it had already incurred nearly $80,000 in attorney's fees. Doc. 74-1.

The case proceeded to a bench trial, in which InterCon requested $214,349.96 in damages. Doc. 66. I ultimately found for InterCon on the breach-of-contract claim and for TEAM on the contractual-indemnification claim. Doc. 72. I found that InterCon had not proven causation for its claimed damages beyond a one-week period in which it prepared for a third hot tap and line stop and that these costs (labor and materials) totaled

$43,809.01. *Id.* Because early in the dispute, TEAM had agreed to forgo the $29,450 InterCon owed it under the contract, I awarded the difference between InterCon's costs and the contract price—$14,359.01. *Id.* Judgment entered on November 4, 2022. Doc. 73.

Under the subcontract between the parties, "the prevailing party" in a lawsuit "arising under" the subcontract is "entitled to recover reasonable attorney fees in addition to any other relief granted by the court. Ex. 5.[1] InterCon now seeks to recover $273,000.50 in attorney's fees under this provision. Doc. 74. TEAM resists, arguing that InterCon forfeited attorney's fees by failing to plead them in its complaint; that TEAM, not InterCon, was the prevailing party; and that InterCon's requested fees are unreasonable, particularly in light of InterCon's net award for much less than demanded and TEAM's settlement offer. Doc. 75. InterCon did not file a reply.

## II. ATTORNEY'S FEES

### A. Pleading Standard

TEAM argues that InterCon failed to adequately plead its request for attorney's fees in its complaint. In connection with its breach-of-contract claim, InterCon alleged it "has suffered damages in an amount to be determined at trial." Doc. 1. In connection with its contractual-indemnification claim, InterCon alleged TEAM must "indemnify InterCon from any claims arising out of the Subcontractor Agreement, including all of InterCon's costs and actual attorneys' fees InterCon expended in pursuing its claim and this action." *Id.* InterCon concluded:

---

[1] "Ex." refers to the parties' joint trial exhibits. TEAM once again argues that a different contract controls, despite *stipulating at trial* that "InterCon subcontracted the Hot Tap/Line Stop work to TEAM pursuant to a December 4, 2017 Subcontractor Agreement [Exhibit 5]." Doc. 50. As noted in my prior order, TEAM has waived any argument contrary to the stipulation. Doc. 72.

> **WHEREFORE**, [InterCon] demands judgment on the foregoing claims as follows:
> A. That judgment be entered in InterCon's favor and against TEAM for all the monetary damages suffered by InterCon; together with all further costs and expenses, including attorneys' fees by reason of TEAM's breach of the Subcontractor Agreement; and
> B. That InterCon be granted such other relief as this Court deems just and appropriate.

*Id*. I disagree with TEAM that InterCon only requested attorney's fees in connection with its contractual-indemnification claim; InterCon's conclusion (applicable to both claims) also requested attorney's fees.

TEAM suggests that attorney's fees are "special damages" that must be pleaded with specificity. Here, InterCon's complaint does not cite the relevant contractual provision awarding fees to the prevailing party. Thus, TEAM suggests InterCon's pleading is inadequate.

Although state law governs the award of attorney's fees in a diversity case,[2] whether InterCon properly pleaded attorney's fees in its complaint is a procedural matter subject to federal law.[3] Federal Rule of Civil Procedure 9(g) provides that "[i]f an item

---

[2] ***Ryan Data Exch., Ltd. v. Graco, Inc.***, 913 F.3d 726, 735 (8th Cir. 2019).

[3] ***Riordan v. State Farm Mut. Auto. Ins. Co.***, 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, . . . the procedure for requesting an award of attorney fees is governed by federal law." (quoting ***Carnes v. Zamani***, 488 F.3d 1057, 1059 (9th Cir. 2007)); ***Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.***, 127 F. Supp. 3d 607, 612-13 & n.3 (E.D. Va. 2015) (holding that "the Federal Rules of Civil Procedure govern the procedural issues in this case" and analyzing whether defendant forfeited request for attorney's fees by failing to request attorney's fees in its answer under Federal Rule of Civil Procedures 9(g) and 54); ***Coral Grp., Inc. v. Shell Oil Co.***, No. 4:05-CV-0633-DGK, 2013 WL 4067625, at *2 (W.D. Mo. Aug. 12, 2013) ("Where . . . attorneys' fees are available [in a diversity action], federal procedural rules govern how a litigant must request them." (citing ***Karl's, Inc. v. Sunrise Computers, Inc.***, 21 F.3d 230, 232 (8th Cir.1994) (holding decision whether to conduct a hearing on attorneys' fees award is a matter of procedure governed by federal law))); *see also* ***Karnatcheva v. JPMorgan Chase Bank, N.A.***, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law."); ***Sayre v. Musicland Grp.***, 850 F.2d 350, 353-54 (8th Cir. 1988) (holding that "[t]he pleading of affirmative defenses is a procedural matter" and that whether diversity defendant

3

of special damage is claimed, it must be specifically stated." "'Special damages' are those types of damages that, although resulting from the wrongful act, are not usually associated with the claim in question and must be plead [sic] in order to avoid unfair surprise to the defendant."[4] Contractual attorney's fees may be considered special damages when required to be proved at trial.[5] This aligns with Federal Rule of Civil Procedure 54(d)(2)(A), which provides "[a] claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."[6]

Since Rule 54 was amended in 1993, the vast majority of courts have held that it governs the award of attorney's fees under a contractual provision awarding fees to the "prevailing party"; these courts have held that such fees are not "special damages" under Rule 9(g) and do not need to be proved at trial.[7] And indeed, an Iowa statute provides:

---

waived defense by failing to raise it in its answer was a matter of federal, not state, law).

[4] *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922 n.10 (8th Cir. 2004).

[5] *See id.* (citing *Nat'l Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 916-17 & n.2 (8th Cir. 1997) (holding that attorney's fees were special damages under indemnification clause agreeing to hold parties harmless from losses, including attorney's fees incurred as a result of a breach, and noting that plaintiff would be prejudiced by late amendment since "it had already completed depositions of witnesses who were likely to have knowledge of such a claim," suggesting the claim for attorney's fees would need to be proved at trial); *Maidmore Realty Co. v. Maidmore Realty Co.*, 474 F.2d 840, 842-43 (3d Cir. 1973) (per curiam) (holding that claim for attorney's fees related to presuit collection efforts were special damages; contractual provision provided mortgagee would "pay all costs of collection, including reasonable attorneys' fees . . . , either with or without the institution of an action or proceeding")).

[6] *See also* **Fed. R. Civ. P. 54(d)(2) advisory committee notes to 1993 amendment** (noting new provision "establishes a procedure for presenting claims for attorneys' fees," but "it does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury").

[7] *Wiley v. Mitchell*, 106 F. App'x 517, 522-23 (8th Cir. 2004) (favorably citing *Rissman v. Rissman,* 229 F.3d 586, 587-88 (7th Cir. 2000); *Cap. Asset Rsch. Corp. v. Finnegan*, 216 F.3d 1268, 1270-74 (11th Cir. 2000)); *Liquid Cap. Exch., Inc. v. BDC Grp., Inc.*, No. 20-CV-89 CJW-MAR, 2022 WL 15045058, at *3 (N.D. Iowa Oct. 26, 2022), *appeal dismissed*, No. 22-

"When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as part of the costs a reasonable attorney fee to be determined by the court."[8] Attorney's fees here were not a substantive element of damages to be proved at trial; thus, they did not need to be specifically pleaded under Rule 9(g). InterCon adequately raised the issue of attorney's fees by generally requesting attorney's fees in its complaint and by filing a post-judgment motion for attorney's fees under Rule 54.

The case relied on by TEAM, *Nelson Cabinets v. Peiffer*,[9] is distinguishable. First, that case involved a statutory claim for attorney's fees, not a contractual claim for attorney's fees (which both Iowa and federal law indicate are to be determined after judgment along with other costs). Second, to the extent *Nelson Cabinets* noted federal courts "require[e] a claim for attorney fees to be specifically pleaded," it relied on a discussion of federal law from 1990—before Rule 54's amendment.[10]

Accordingly, I reject TEAM's argument that InterCon forfeited its request for attorney's fees based on pleading deficits.

---

3239 (8th Cir. Jan. 23, 2023); **Route Triple Seven**, 127 F. Supp. 3d at 613-15; **Coral Grp.**, 2013 WL 4067625, at *2-3; **Lawley v. Northam**, No. CV ELH-10-1074, 2013 WL 1786484, at *24-28 (D. Md. Apr. 24, 2013); **Specialty Retailers, Inc. v. Main St. NA Parkade, LLC**, 804 F. Supp. 2d 68, 71-73 (D. Mass. 2011); **Thirty & 141, LP v. Lowe's Home Centers, Inc.**, No. 4:06-CV-01781-SNL, 2008 WL 1995343, at *2-3 (E.D. Mo. May 6, 2008), *rev'd on other grounds,* 565 F.3d 443 (8th Cir. 2009); *see also* **Flynn v. AK Peters, Ltd.**, 377 F.3d 13, 26 (1st Cir. 2004) (Rule 54 governed attorney's fees under statute providing for attorney's fees to prevailing party; fees did not have to be proved at trial nor specifically pleaded in complaint); *cf.* **Farmers Coop. Soc'y, Sioux Ctr., Iowa v. Leading Edge Pork LLC**, No. 16-CV-4034-LRR, 2017 WL 3496498, at *1-2 (N.D. Iowa Aug. 15, 2017) (distinguishing contractual provision providing that "attorney's fees became due immediately upon a breach," which were substantive damages to be proved at trial, from prevailing-party provisions).

[8] **Iowa Code § 625.22(1)**.

[9] 542 N.W.2d 570, 573 (Iowa Ct. App. 1995).

[10] ***Id.***

## B. Prevailing Party

TEAM argues that InterCon is not the prevailing party under the contract because although it prevailed on the breach-of-contract claim, TEAM prevailed on the contractual-indemnification claim. In *NCJC, Inc. v. WMG, L.C.*, the case relied upon by TEAM, the Iowa Supreme Court held that the plaintiff was the prevailing party, even though the defendant had prevailed on one count (it was dismissed at summary judgment) and even though the jury had awarded the plaintiff far less than it demanded and less than the defendant's (rejected) settlement offer.[11] The court noted that a "prevailing party" is "one 'in whose favor a judgment is rendered, regardless of the amount of damages awarded.'"[12] Accordingly, here, InterCon is the prevailing party under the contract.

## C. Reasonableness of Fees

"When a written contract allows for the recovery of attorney's fees, the award must be for reasonable attorney's fees."[13] The party seeking fees must "prove both that the services were reasonably necessary and that the charges were reasonable in amount."[14] Factors to consider include:

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service.[15]

---

[11] *NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58, 62-63 (Iowa 2021).

[12] *Id.* (emphasis omitted) (quoting **Prevailing Party**, *Black's Law Dictionary* (11th ed. 2019)).

[13] *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007).

[14] *Id.* (quoting *Lynch v. City of Des Moines*, 464 N.W.2d 236, 238 (Iowa 1990)).

[15] *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001) (quoting *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990)).

"The district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case."[16]

### 1. *Hourly Rate*

InterCon submitted its attorney billing sheet to support its request for fees. Doc. 74-1. InterCon seeks fees only for its main counsel, a large law firm based in Wisconsin; InterCon does not seek fees for local counsel. The firm billed InterCon $495 to $540 per hour for attorney William McCardell; $280 to $350 per hour for attorney Chase Horne; $185 to $215 per hour for paralegal Richard Hendricks; $230 per hour for the services of Kai Hovden; and $180 to $185 per hour for the services of Stephanie Meister. InterCon provided the court with no information on the attorneys' and paralegals' respective experience to differentiate their rates, and InterCon's submission does not even make clear Hovden's and Meister's position at the law firm. The court has gleaned from the law firm's website that McCardell is an experienced attorney specializing in construction law and named a "best lawyer" in 2007 (the website does not otherwise indicate how long McCardell has been practicing); that Horne is an equity partner with more than ten years' experience; that Hovden is an attorney; and that Meister is a paralegal.

TEAM challenges the reasonableness of the hourly rates requested by InterCon. TEAM argues that McCardell's and Horne's "escalating hourly rate[s] . . . are not customary in the state of Iowa, especially for the nature of this simple contractual dispute." Doc. 75. InterCon did not file a reply providing the court with any additional information in response to this argument.

---

[16] *Id.* (cleaned up) (quoting *Landals*, 454 N.W.2d at 897).

As an initial matter, it is commonplace for law firms (both in Iowa and around the country) to increase their hourly rates on an annual basis. When determining the reasonableness of a requested hourly rate, the court may consider the submitted evidence as well as its own expertise.[17] By nature of the court's involvement in discovery disputes, which often involve an award of attorney's fees and the submission of hourly rates by Iowa attorneys under seal, the court is aware that hourly rates often increase from year to year. Indeed, "[w]hen litigation is protracted," courts sometimes honor requests to award the higher "current rates for all work performed on a case[,] rather than historical rates," to "account[] for inflation and loss of interest."[18] That InterCon's billing rates increased from year to year does not show their unreasonableness.

I do agree, however, that InterCon's requested rates are high for Iowa and that InterCon has not proved the reasonableness of its requested rates. The requested hourly rate must be "consistent with market rates and practices for similar work in the community."[19] "The market rate . . . is not necessarily the rate of pay . . . counsel billed its client."[20] "Billing sheets provided by the firm . . . may be considered by the court," but offer "little evidence of the prevailing rate of pay for similarly situated [attorneys]."[21]

Here, InterCon chose to hire a Wisconsin-based law firm. The law firm's billing sheets, therefore, offer no insight into hourly rates for *Iowa* attorneys, and InterCon has

---

[17] *See Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 833 (Iowa 2009).

[18] *Houghton v. Sipco, Inc.*, 828 F. Supp. 631, 641 (S.D. Iowa 1993), *vacated,* 38 F.3d 953 (8th Cir. 1994) (holding that unrelated errors required new trial, so vacating fee award); *see also Landals*, 454 N.W.2d at 897-98 (affirming trial court's use of current hourly rate for state-law statutory fee award, even though "attorney historically charged a lower hourly rate").

[19] *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 734 (Iowa 2005).

[20] *Id.*

[21] *Id.*

offered no other evidence to establish the reasonableness of its requested rates. Local attorneys before this court in other matters have recently noted the following hourly rates:

- $555 an hour in 2020 for partners with thirty years' specialized experience in area of litigation and $390 to $440 an hour for associates working at Des Moines branch of large law firm headquartered in Minneapolis;

- $290 an hour in 2021 for partner with twenty years' experience and $220 an hour for three-year associate at large Des Moines law firm;

- $250 an hour in 2022 for partner with almost twenty years' experience at large Cedar Rapids law firm (this case was tried in Cedar Rapids);

- $360 an hour in 2022 for partner with thirty years' experience and $190 an hour for five-year associate at midsize Des Moines law firm;

- $375 an hour in 2022 for partner with twenty-five years' experience and $265 an hour for partner with fifteen years' experience at Des Moines branch of large law firm headquartered in Alabama.

The court has also considered recent caselaw setting out hourly rates for Iowa attorneys.[22]

---

[22] *Goche v. WMG, L.C.*, 970 N.W.2d 860, 862 (Iowa 2022) (noting trial court in 2020 reduced "hourly rate of . . . lead Minneapolis attorney from $560 to $300 and lowered that firm's paralegal hourly rate to $100," but ultimately finding attorney's fees not warranted and therefore not addressing reasonableness of hourly rate); *Pocket Plus, LLC v. Pike Brands, LLC*, 53 F.4th 425, 436-37 (8th Cir. 2022) (holding that district court did not abuse its discretion in finding Des Moines attorneys had not established reasonableness of hourly rates ranging from $400 to $480 for the Iowa market when they offered only a national survey as evidence; affirming district court's use of an hourly rate of $350 an hour, which district court found was "highest reasonable rate available in the record" based on a 2008 case awarding fees based on that hourly rate); *Liquid Cap. Exch.*, 2022 WL 15045058, at *6 (reducing out-of-state counsel's requested hourly rate to mirror local counsel's hourly rate, a large Des Moines law firm, and awarding fees based on an hourly rate of $250 an hour for associates and $155 an hour for paralegals); *Roeder v. United States Stove Co.*, No. 19-CV-58-LTS, 2019 WL 13233162, at *1 (N.D. Iowa Dec. 27, 2019) (finding reasonable rate of $310 an hour for partner at large Cedar Rapids firm with more than twenty-five years' experience); *Am. Gen. Life Ins. Co. v. One Vision*, No. 19-CV-3016-CJW-KEM, 2019 WL 6134483, at *11 (N.D. Iowa Nov. 19, 2019) (finding hourly rate of $225 per hour reasonable based on court's own knowledge of the local bar when out-of-state counsel requested $297 an hour but submitted no evidence to support the reasonableness of this request in Iowa); *Wologo v. Transamerica Life Ins. Co.*, No. C 17-136-MWB, 2018 WL 1632243, at *2 (N.D. Iowa Apr. 4, 2018) (noting "counsel from Iowa avers that he has received as much as

Based on the lack of evidentiary support provided by InterCon to prove the reasonableness of its requested rates, the court bases its reasonableness finding on its own experience and research and finds that $300 an hour is reasonable for attorneys McCardell and Horne (partners with at least fifteen and ten years of experience, respectively); $200 an hour for Hovden (an attorney with an unclear amount of experience); and $150 an hour for paralegals.

### 2. *Time Expended*

TEAM argues that InterCon's attorneys spent an unreasonable amount of time on this case. InterCon's counsel worked 716 hours on the case, incurring $273,000.50 in attorney's fees. TEAM argues that the amount of time is unreasonable given the ultimate recovery of only $14,359.01. TEAM argues that this case involved a simple contractual dispute that could have been settled without litigation had InterCon demanded the

---

$295 per hour from civil litigation clients in Iowa" and reducing D.C. attorney's requested rate of $675 an hour by 30% for several reasons, including a finding that "such an hourly rate [wa]s excessive for civil litigation in Iowa or, at the very least, excessive to shift to a losing pro se party in civil litigation in Iowa, because the pro se party simply suffers the burden of the opposing party's choice of counsel" (emphasis omitted)); ***Monohon v. BNSF Ry. Co.***, No. 4:14-cv-00305-JAJ, 2016 WL 11651712, at *5-6 (S.D. Iowa Dec. 27, 2016) (finding reasonable hourly rate of $285 for partner with more than twenty years' experience, $200 for attorneys with ten years' experience (reduced from $230), and $150 for new associate based on affidavits from local counsel opining that $275 an hour is reasonable rate in Des Moines for experienced partners and $150 to $200 an hour is reasonable for associates); ***Hanzl v. Collier***, No. 10-CV-4122-DEO, 2014 WL 775472, at *11-12 (N.D. Iowa Feb. 25, 2014) (reducing requested hourly rate from $400 to $200 an hour when Florida lawyer offered no evidence of reasonable rate in Iowa, despite having information available from local counsel; and court's own experience suggested $400 was an unreasonable hourly rate for a real estate lawyer in Iowa, especially since many services could have been performed by a nonlawyer); ***EEOC v. CRST Van Expedited, Inc***, No. 07-CV-95-LRR, 2010 WL 520564, at *11, *13 (N.D. Iowa Feb. 9, 2010) (noting large Cedar Rapids law firm charged its client hourly rates ranging from $165 to $295, including for partner with more than twenty-five years' experience; and reducing national counsel's hourly rates accordingly, finding reasonable $295 an hour for partners, $175 an hour for associates, and $110 an hour for paralegals and other support staff), *vacated*, 679 F.3d 657 (8th Cir. 2012) (reversing summary judgment ruling on the merits and therefore vacating attorney-fee award).

judgment amount from the start, rather than more than $200,000. TEAM also argues that attorney's fees incurred after it offered to settle the case for $100,000—more than InterCon's ultimate recovery—are unreasonable.

If TEAM believed InterCon's demands unreasonable, yet knew it owed InterCon some amount of money, the Federal Rules of Civil Procedure provide a mechanism TEAM could have employed to prevent InterCon from continuing to accrue attorney's fees for which TEAM would ultimately bear responsibility. Under Rule 68, a defendant may make an offer to confess judgment for a particular amount, and if the plaintiff rejects the offer but ultimately recovers less, the defendant is not responsible for the plaintiff's costs incurred after the offer.[23] Where, as here, the underlying source authorizing attorney's fees classifies them as costs, attorney's fees are included as costs under Rule 68.[24]

There is no evidence TEAM made any offer to settle this case—not even as part of mediation proceedings—until InterCon's legal team had already spent more than 200 hours working on the case and accrued nearly $80,000 in attorney's fees. But TEAM's $100,000 settlement offer in February 2020 exceeded InterCon's eventual recovery, even when attorney's fees and costs are considered (i.e., $100,000 would have encompassed $14,359.01 in damages, as well as prejudgment interest and InterCon's attorney's fees incurred at that time).[25]

---

[23] **Fed. R. Civ. P. 68(d)**; *see also Scheeler v. Crane Co.*, 21 F.3d 791, 792 (8th Cir. 1994) (applying Rule 68 in diversity case involving only Iowa state-law claims, rather than similar Iowa statute, *see* **Iowa Code §§ 677.4-677.10**).

[24] *Scheeler*, 21 F.3d at 792; **Iowa Code § 625.22(1)**.

[25] *Cf. Scheeler*, 21 F.3d at 793 (noting offer of judgment for $15,000 did not exceed eventual recovery such that cost-shifting under Rule 68 applied, even though jury awarded only $12,500 in damages, since at the time of offer of judgment, plaintiff had already incurred $3,500 in costs). InterCon did not move for costs, and the time for doing so has expired. *See* **LR 54(a)(1)(A)**. In any event, the costs the court is aware of would not render TEAM's settlement offer less than InterCon's ultimate recovery. I discuss prejudgment interest in the next section.

11

TEAM's settlement offer did not amount to an offer of judgment under Rule 68.[26] Nevertheless, the Iowa Supreme Court has held that "the recovery of less than a pretrial settlement offer may be considered in setting a reasonable [attorney's] fee."[27] The court favorably cited a Ninth Circuit case in which Rule 68 did not apply (because the definition of costs did not include attorney's fees), but the circuit court still considered an unaccepted offer of judgment for more than the ultimate recovery in determining reasonable attorney's fees.[28] The Ninth Circuit reasoned that "the only one who benefitted by pursuing the litigation after the [offer of judgment] was made was the plaintiffs' attorney" and that when determining a reasonable attorney's fee, the district court should consider "the results the plaintiff obtained by going to trial compared to" the settlement offer.[29]

Here, I agree with TEAM that InterCon spent an unreasonable amount of time on this case given InterCon's settlement offer and the results ultimately obtained. InterCon sought more than $200,000 in damages but ultimately recovered less than $15,000, and InterCon rejected TEAM's $100,000 settlement offer that would have covered damages

---

[26] *See Cabala v. Crowley*, 736 F.3d 226, 230 (2d Cir. 2013) (distinguishing settlement offer from offer of judgment).

[27] *Dutcher v. Randall Foods*, 546 N.W.2d 889, 897 (Iowa 1996) (discussing statutory attorney's fees under the Fair Labor Standards Act and Iowa Civil Rights Act).

[28] *Haworth v. State of Nev.*, 56 F.3d 1048, 1052 (9th Cir. 1995).

[29] *Id.* In *Ney Leasing Corp. v. Cargill Meat Logistics Sols., Inc.*, No. C08-1041, 2010 WL 11691886, at *1, *3-5 (N.D. Iowa July 27, 2010), a magistrate judge for this court declined to reduce attorney's fees based on the defendant's $322,000 settlement offer early in the case, despite the plaintiff's ultimate recovery of only $138,000 on its breach-of-contract claim. The court found it "risky" to "compare settlement offers with a judgment entered following trial" in that case, since at the time of the settlement offer, the defendant still retained one of plaintiff's trucks (and the settlement offer "apparently included the purchase of one truck"), but by the time of trial, the truck had been returned (so judgment damages did not include its purchase price). *Id.* at *5. Here, the circumstances between the parties have not changed throughout litigation as in *Ney*, making it easier to determine that the settlement offer exceeded the judgment amount.

as well as its attorney's fees and interest up to that point. I therefore decline to award InterCon attorney's fees incurred after the settlement offer.[30]

To the extent TEAM argues InterCon spent an unreasonable amount of time on this case leading up to the settlement offer, I disagree. Although perhaps a "simple contractual dispute," as characterized by TEAM, the underlying facts surrounding the line-stop failure (and ultimate breach of contract) were anything but simple, requiring expert-opinion evidence. *See* Doc. 72. In addition, some of the legal issues, particularly surrounding damages, required in-depth research by this court. *See id.* At the time of TEAM's settlement offer, the parties had been litigating the case for more than a year and trial was swiftly approaching (ultimately postponed because of the COVID-19 pandemic). *See* Docs. 13, 22, 23. Although the parties had not yet completed depositions, they had completed written discovery, produced expert opinions, engaged in mediation, and prepared for depositions. *See* Docs. 13, 74-1. Given the stage of the case, it was not unreasonable for InterCon attorneys to have spent 205.4 hours on the case (130.5 hours for attorney Horne and 74.9 hours for attorney McCardell) and the paralegals to have spent 8.2 hours on the case at the time of the settlement offer.

Accordingly, I find it reasonable in this case to compensate InterCon for the time its attorneys and paralegals spent on this case before TEAM's settlement offer that exceeded InterCon's ultimate recovery. Although this cuts InterCon's compensable attorney time by more than two-thirds, InterCon could have and should have resolved this case much earlier in time, rather than making unreasonable damages demands unsupported by both the facts and the law. *See* Doc. 72. I find reasonable an award of attorney's fees based on 205.4 attorney hours at $300 an hour and 8.2 paralegal hours at $150 an hour, for a total of $62,850 in attorney's fees.

---

[30] *See Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (holding that the district court should consider settlement offers "roughly equal to or more than the total damages recovered by the prevailing party" and "reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer").

## III. PREJUDGMENT AND POSTJUDGMENT INTEREST

InterCon did not move for the award of prejudgment or postjudgment interest. Nevertheless, the Eighth Circuit has held that when the award of interest is mandatory, it should be awarded, even when the party entitled to such interest "fail[s] to timely raise the issue in a Federal Rule of Civil Procedure 59(e) motion."[31]

State law governs the award of prejudgment interest in a state-law diversity case.[32] Prejudgment interest is mandatory under Iowa law.[33] By statute, interest accrues from commencement of the action and is "calculated . . . at a rate equal to the one-year treasury constant maturity published by the federal reserve in the H15 report settled immediately prior to the date of the judgment plus two percent."[34] Prejudgment interest is not awarded

---

[31] *Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1052 (8th Cir. 2010) (remanding for award of mandatory prejudgment and postjudgment interest, even though plaintiff did not move for interest under Rule 59(e) and instead raised the issue for the first time in a timely appeal); *see also* ***Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.***, 735 F.3d 993, 1007-08 (8th Cir. 2013) (collecting cases, including one from the Third Circuit, holding that postjudgment interest should be awarded automatically even if not requested); ***Gilster v. Primebank***, 884 F. Supp. 2d 811, 884-85 (N.D. Iowa 2012) (awarding prejudgment and postjudgment interest even though neither party mentioned it in post-trial briefing), *rev'd and remanded,* 747 F.3d 1007 (8th Cir. 2014) (reversing for a new trial); *but see* ***Winslow v. FERC***, 587 F.3d 1133, 1135-36 (D.C. Cir. 2009) (in an opinion by then-Judge Kavanaugh, relying on Supreme Court dicta to hold that the award of mandatory prejudgment interest must be raised in a timely Rule 59(e) motion and collecting other circuit court cases holding the same).

[32] *Capella Univ.*, 617 F.3d at 1052.

[33] ***Hughes v. Burlington N. R.R. Co.***, 545 N.W.2d 318, 321 (Iowa 1996) ("The award of interest is mandatory and should be awarded even when interest has not been requested.").

[34] **Iowa Code §§ 535.3(1)(a), 668.13(1), (3)**; *see also* ***Macal v. Stinson***, 468 N.W.2d 34, 36 (Iowa 1991) (awarding prejudgment interest on contractual claim under § 535.3); ***Manidhari Gums & Chemicals v. Caremoli USA, Inc.***, No. 4:16-cv-00112-RGE-SBJ, 2016 WL 8809862, at *9 (S.D. Iowa Dec. 21, 2016) (same). The parties' contract did not provide for the calculation of interest. *Cf.* **Iowa Code § 668.13(2)**.

on attorney's fees.[35]

Here, judgment was entered on November 4, 2022 (Doc. 73), making the applicable prejudgment interest rate 6.5% (4.5% + 2%).[36] InterCon is entitled to prejudgment interest on $14,359.01 accruing from October 31, 2018, through November 4, 2022, at an annual rate of 6.5%—by my calculations, $3,746.13.[37]

The award of postjudgment interest is governed by federal law and also mandatory.[38] Such interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1 year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment" and is compounded annually.[39] Here, InterCon is entitled to postjudgment interest on the damages award of $14,359.01 from November 4, 2022, at an annual rate of 4.56%.[40] InterCon is entitled to postjudgment interest on the awards of prejudgment interest and attorney's fees running from the date of amended judgment (entered after this order) at an annual rate based on the date of

---

[35] *Landals*, 454 N.W.2d at 898; *Dutrac Cmty. Credit Union v. Hefel*, No. 15-0143, 2015 WL 7574230, at *11-12 (Iowa Ct. App. Nov. 25, 2015).

[36] **Post Judgment Interest Table, Iowa Judicial Branch**, https://www.iowacourts.gov/iowa-courts/district-court/post-judgment-interest-table (last visited February 17, 2023).

[37] $14,359.01 x .065 x (4 years + $\frac{5 \text{ days}}{365}$) = $3,746.13. *See Landals*, 454 N.W.2d at 896-97 (prejudgment interest is simple, not compounded); **How is the amount of interest calculated on a judgment?, Iowa Judicial Branch**, https://www.iowacourts.gov/faq/how-is-the-amount-of-interest-calculated-on-a-judgment/ (last visited February 23, 2023).

[38] *Capella Univ.*, 617 F.3d at 1051.

[39] **28 U.S.C. § 1961(a), (b)**.

[40] *See Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-cv-00299-SNLJ, 2022 WL 17496064, at *1-2 (E.D. Mo. Dec. 8, 2022) (awarding postjudgment interest on jury's compensatory-damages award from date of judgment after the verdict, rather than date of amended judgment after post-trial motions); **Post-Judgment Interest Rates, Southern District of California**, https://www.casb.uscourts.gov/post-judgment-interest-rates#:~:text=The%20post%2Djudgment%20interest%20rate,2022%20can%20be%20found%20here (last visited February 17, 2023).

amended judgment (as set forth in 28 U.S.C. § 1961).[41]

## IV. CONCLUSION

InterCon's motion for attorney's fees (Doc. 74) is **GRANTED IN PART** AND **DENIED IN PART**. The clerk of court is directed to enter amended judgment for InterCon as follows:

- $14,359.01 in damages on the breach-of-contract claim;

- Postjudgment interest on the breach-of-contract damages ($14,359.01) accruing from November 4, 2022, at an annual rate of 4.56%, compounded annually;

- $62,850 in attorney's fees;

- $3,746.13 in prejudgment interest;

- Postjudgment interest on the attorney's fees and prejudgment interest (totaling $66,596.14) accruing from the date of amended judgment, at an annual rate based on the date of amended judgment as set forth in 28 U.S.C. § 1961, compounded annually.[42]

**SO ORDERED** on March 7, 2023.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[41] *See Travelers Prop.*, 735 F.3d at 1009 (awarding postjudgment interest on award of mandatory prejudgment interest commencing with the entry of judgment in the appeal, in which the court recognized for the first time that defendant owed prejudgment interest); *Jenkins ex rel. Agyei v. State of Mo.*, 931 F.2d 1273, 1277 (8th Cir. 1991) (postjudgment interest on attorney's fees accrues from date of judgment awarding attorney's fees).

[42] The clerk of court is directed to specify the applicable rate in the judgment, which can be found here: ***Post-Judgment Interest Rates, Southern District of California***, https://www.casb.uscourts.gov/post-judgment-interest-rates#:~:text=The%20post%2Djudgm ent%20interest%20rate,2022%20can%20be%20found%20here (last visited February 17, 2023).